Jeffrey PANOZZO, Plaintiff,

v.

S.A. RHOADS, individually and as Chief of Police of the Village of East Hazel Crest, Ann P. Prater, individually and as President of East Hazel Crest, and Robert Greeney, Harold Witt, Grace Crider, and Manuel Fernandez, each individually and as Trustee of the Village of East Hazel Crest, and the Village of East Hazel Crest, Illinois, Defendants.

No. 86 C 5363.

United States District Court, N.D. Illinois, E.D.

May 10, 1989.

[black redaction box]

Lonny Ben Ogus, Chicago, Ill., for plaintiff.

John B. Murphey, Rosenthal, Murphey, Coblentz & Janega, Richard A. Cowen, Cowen, Crowley & Nord, P.C., Chicago, Ill., for defendants.

## ORDER

BUA, District Judge.

This lawsuit stems from the termination of a police officer by the Village of East Hazel Crest, Illinois ("the Village"). Plaintiff, the terminated officer, has filed suit against the Village, its chief of police, its president, and four of its trustees. Seeking relief under 42 U.S.C. § 1983, plaintiff contends that defendants violated his right to procedural due process. He also asserts claims of breach of contract and retaliatory discharge. When defendants moved for summary judgment on all three of plaintiff's claims, this court referred defendants' motion to Magistrate W. Thomas Rosemond, Jr. In a report and recommendation dated February 28, 1989, Magistrate Rosemond concluded that the court should grant summary judgment for defendants on plaintiff's retaliatory discharge claim. The magistrate also recommended that the court deny defendants' motion with respect to plaintiff's due process and contract claims. After reviewing the parties' objections to the magistrate's findings, this court respectfully declines to adopt the magistrate's report and recommendation. For the reasons stated herein, the court grants defendants' motion for summary judgment on plaintiff's due process claim. Having disposed of plaintiff's only federal claim, the court dismisses plaintiff's remaining claims for lack of jurisdiction.

## FACTS

Plaintiff Jeffrey Panozzo worked as a police officer for the Village of East Hazel Crest from 1978 to 1985. As a permanent employee of the Village, Panozzo enjoyed substantial job security. Under the terms of its own rules and regulations, the Village could only terminate Panozzo for cause.

During his tenure with the Village police force, Panozzo's official duties included monthly court appearances for the purpose of testifying on pending cases. On the morning of July 2, 1985, Panozzo missed his regularly scheduled court appearance. Later that day, during a telephone conversation with Chief of Police S.A. Rhoads, Panozzo explained that he had failed to appear in court because he was not feeling well. At that point, Rhoads ordered Panozzo to report for his regular shift that afternoon in order to see a doctor. Several hours later, when Panozzo failed to report for duty, Rhoads decided to suspend Panozzo without pay. At 8:30 p.m. on the evening of July 2, 1985, Panozzo received notice of his suspension. The notice stated that Panozzo had apparently violated police regulations on that day by failing to report for duty, refusing to obey a lawful order, and failing to produce a physician's statement justifying the use of sick leave. The notice also indicated that Panozzo would receive an opportunity to explain his actions at a hearing scheduled for July 3, 1985 at 1:00 p.m.

The following afternoon, Panozzo reported to the East Hazel Crest Police Department for his scheduled hearing. Claiming that his attorney could not attend the hearing that day, Panozzo asked Rhoads to reschedule the hearing. Rhoads responded by proposing a one-hour continuance so that Panozzo could find another lawyer. Panozzo rejected this proposal, saying that he needed more time. Rhoads then gave Panozzo several opportunities to explain why he had apparently violated police regulations on the previous day. When Panozzo refused to offer any explanation for his conduct, Rhoads immediately terminated him.

Panozzo then sought review of his termination. He filed an appeal with the Village Board of Trustees ("the Board") on the night of July 12, 1985. After a preliminary

review of Panozzo's appeal, the Board concluded that Panozzo had not complied with the appeal procedures outlined in the Village personnel policy. The Board noted that Panozzo had failed to file a timely appeal. In addition, Panozzo had not articulated a specific factual basis for his appeal. Based on these procedural defects, the Board denied Panozzo's appeal without assessing the merits of his claim.

## DISCUSSION

### I. Procedural Due Process

According to Count I of Panozzo's complaint, neither before nor after his termination did Panozzo receive the procedural due process guaranteed by the Fifth and Fourteenth Amendments. Defendants contend, however, that their treatment of Panozzo fully satisfied constitutional requirements of due process. In order to evaluate defendants' motion for summary judgment on Count I, this court must examine the two incidents on which Panozzo bases his due process claim: the pretermination hearing with Rhoads and Panozzo's futile efforts to obtain a post-termination hearing before the Board.

#### A. *Pretermination Hearing*

■ As a permanent employee of the Village police force, Panozzo possessed a property right in continued employment. Therefore, defendants could not deprive Panozzo of his job without due process. *See Board of Regents v. Roth*, 408 U.S. 564, 576–77, 92 S.Ct. 2701, 2708–09, 33 L.Ed.2d 548 (1972). More specifically, defendants could not terminate Panozzo until he received a pretermination hearing. *See Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed. 2d 494 (1985). Although Village procedures provided for comprehensive post-termination review, due process entitled Panozzo to a pretermination hearing that included "oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." *Id.* at 546, 105 S.Ct. at 1495.

■ Magistrate Rosemond rejected defendants' contention that Panozzo's pretermination hearing fulfilled the requirements of *Loudermill.* In particular, the magistrate found fault with the notice given to Panozzo. Because Panozzo received the notice on the eve of his hearing, the magistrate concluded that defendants had not given Panozzo sufficient time to prepare for the hearing or retain an attorney. The magistrate also criticized the notice for its failure to describe the facts underlying the charges against Panozzo. In light of these deficiencies, the magistrate found that the notice did not comport with due process. For this reason, he recommended denial of defendants' motion for summary judgment on Count I.

With all due respect, this court cannot adopt the magistrate's recommendation with respect to Count I. That recommendation rests on some serious misconceptions about defendants' due process obligations. For instance, the magistrate concluded as a matter of law that defendants denied Panozzo due process by notifying him of his pretermination hearing less than a day before the hearing took place. In reaching this conclusion, the magistrate relied on *In re Center Wholesale, Inc.*, 759 F.2d 1440, 1448 (9th Cir.1985) and *Wagner v. Little Rock School District*, 373 F.Supp. 876, 882–83 (E.D.Ark.1974). While both of these cases examined the due process implications of a notice's timing, neither case involved the sort of pretermination hearing prescribed by *Loudermill.* Contrary to the magistrate's finding, *Loudermill* does not require that an employee receive notice of his pretermination hearing more than a day before the hearing. In fact, in applying *Loudermill,* two appellate courts have affirmed the constitutionality of a pretermination hearing where the employee received notice of the charges against him *at the hearing. See Kelly v. Smith*, 764 F.2d 1412 (11th Cir.1985); *Brasslett v. Cota*, 761 F.2d 827 (1st Cir.1985). If this sort of on-the-spot, instantaneous notice does not offend due process, then surely the advance notice that Panozzo received passes constitutional muster.

The magistrate also asserted that defendants violated due process by giving Panozzo insufficient time to secure the services of a lawyer. The magistrate admitted that an employee has no constitutional right to counsel at a pretermination hearing. *See Buschi v. Kirven*, 775 F.2d 1240, 1254–56 (4th Cir.1985) (supervisor did not violate due process when he refused to allow employees' attorneys to attend pretermination hearing). Nonetheless, Village regulations require that each employee receive a reasonable period of time to secure legal counsel for a pretermination hearing. Based on defendants' alleged violation of these regulations, the magistrate ruled that defendants had deprived Panozzo of due process. This ruling mistakenly equates Village regulations with constitutional requirements of due process. Although local rules may offer greater procedural protection than the Constitution requires, such rules do not act "as a ratchet tightening the Due Process Clause. Any such state procedural requirements remain only that, not independently cognizable in a Section 1983 lawsuit." *Jones v. Board of Education*, 651 F.Supp. 760, 766 (N.D.Ill.1986). In Panozzo's case, Village regulations pertaining to an employee's procurement of counsel did not increase defendants' obligations under the Due Process Clause. Panozzo had no constitutional entitlement to an attorney at his pretermination hearing. Therefore, even assuming that defendants failed to give Panozzo sufficient time to locate a lawyer, defendants' violation of Village rules would not amount to a due process violation.

■ Perhaps the magistrate correctly concluded that defendants violated due process by failing to inform Panozzo of the facts underlying the charges against him. Nonetheless, regardless of whether such conduct constitutes a due process violation, qualified immunity shields defendants from liability. Under the doctrine of qualified immunity, government officials performing discretionary functions are immune "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."

*Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *see also Rakovich v. Wade*, 850 F.2d 1180, 1205–10 (7th Cir.1988). Under the circumstances of the instant case, defendants did not violate a clearly established constitutional right when they failed to articulate the factual basis for the charges against Panozzo. Rhoads, who drafted the notice and conducted the pretermination hearing, could reasonably have assumed that Panozzo already knew which incidents had led to his suspension. After all, just a few hours before receiving the notice, Panozzo had received a phone call from Rhoads. During their telephone conversation, Rhoads asked Panozzo why he had missed a court appearance that morning. Rhoads also ordered Panozzo to report for duty that afternoon in order to see a doctor. When combined with the notice that Panozzo later received, Rhoads' phone call arguably satisfied the requirements of *Loudermill*. The phone call and the notice would seem to have given Panozzo sufficient information from which he could discern the facts underlying his suspension. On the other hand, perhaps *Loudermill* required defendants to provide a detailed factual exposition in the notice or at the hearing. Lacking any clear guidance from the recently decided *Loudermill* case, defendants could not reasonably have known whether they had given Panozzo enough information about the charges to satisfy due process. Therefore, with respect to Panozzo's claim that he received insufficient information about the charges, defendants have properly invoked the defense of qualified immunity.

Ultimately, this court can find no substantial constitutional problem with the pretermination procedures that defendants followed in Panozzo's case. The day before his pretermination hearing, Panozzo received notice of the charges against him. Based on his phone conversation with Rhoads earlier that day, Panozzo knew the nature of his employer's evidence concerning the charges. At his hearing with Rhoads the next day, Panozzo received several opportunities to present his side of the

story. Taking all of these factors into account, the court concludes that defendants generally fulfilled the due process requirements imposed by *Loudermill.* Perhaps defendants did not give Panozzo adequate information about the charges against him; but such a minor deviation from due process does not represent the sort of egregious constitutional violation that would justify stripping defendants of their qualified immunity. Consequently, Panozzo cannot state a due process claim based on defendants' pretermination procedures.

### B. *Post-termination Appeal*

■ Count I of Panozzo's complaint also alleges that defendants deprived Panozzo of due process by denying his post-termination appeal. Having found that defendants' pretermination procedures violated due process, the magistrate saw no reason to rule on the constitutionality of defendants' dismissal of Panozzo's appeal. Nonetheless, in a less than subtle hint, the magistrate suggested that defendants acted unconstitutionally when they denied Panozzo's post-termination appeal. The magistrate scornfully observed that defendants based their denial of Panozzo's appeal on a "technicality." The Supreme Court, however, has upheld the constitutionality of such "technicalities": "The State may erect reasonable procedural requirements for triggering the right to an adjudication, ... [a]nd the State certainly accords *due* process when it terminates a claim for failure to comply with a reasonable procedural or evidentiary rule." *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 437, 102 S.Ct. 1148, 1158, 71 L.Ed.2d 265 (1982) (emphasis in original). In filing his appeal, Panozzo failed to comply with the Village's reasonable procedural requirements of timeliness and specificity. Therefore, in accordance with *Logan,* defendants had every right to dismiss Panozzo's appeal on procedural grounds.

■ Even if Panozzo could prove that defendants somehow misapplied Village rules in denying his appeal, he could not maintain a due process claim. When an unauthorized deviation from established state procedure results in a deprivation of property, the person who suffers the deprivation cannot claim a due process violation if he has access to state remedies that could compensate for his loss. *Parratt v. Taylor,* 451 U.S. 527, 543–44, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981); *Toney–El v. Franzen,* 777 F.2d 1224, 1227–28 (7th Cir. 1985), *cert. denied,* 476 U.S. 1178, 106 S.Ct. 2909, 90 L.Ed.2d 994 (1986). Assuming that defendants improperly denied Panozzo's post-termination appeal, Panozzo did not need to resort to a federal lawsuit in order to obtain relief. He could have asked the state courts for a writ of *mandamus* compelling defendants to consider the merits of his appeal. *See Walter v. Board of Education,* 93 Ill.2d 101, 105, 66 Ill.Dec. 309, 313, 442 N.E.2d 870, 872 (1982) ("Where an administrative officer or board has arbitrarily failed to act, *mandamus* will lie to compel that officer or board to perform a duty which the plaintiff is entitled to have performed."). Alternatively, Panozzo could have sought state court review of defendants' denial of his appeal under the common law writ of certiorari. *See Odell v. Village of Hoffman Estates,* 110 Ill.App.3d 974, 977, 66 Ill.Dec. 564, 566, 443 N.E.2d 247, 249 (1982). Given the availability of state remedies, Panozzo cannot base a due process claim on defendants' dismissal of his post-termination appeal. *See Lee v. Hutson,* 810 F.2d 1030, 1031–33 (11th Cir.1987); *Albery v. Reddig,* 718 F.2d 245, 249 & n. 7 (7th Cir.1983).

The facts surrounding Panozzo's suspension and termination provide no foundation for a claim for damages under the Due Process Clause. Therefore, this court grants summary judgment for defendants with respect to Count I.

### II. State Law Claims

Having entered summary judgment on Panozzo's lone federal claim, this court no longer retains pendent jurisdiction over Panozzo's state law claims. When a federal court disposes of all federal claims before trial, thereby eliminating any basis for federal jurisdiction, the court should normally dismiss any remaining state claims. *Maguire v. Marquette University,* 814 F.2d 1213, 1218 (7th Cir.1987); *Baltimore Ori-*

*oles, Inc. v. Major League Baseball Players Association,* 805 F.2d 663, 682 (7th Cir.1986), *cert. denied,* 480 U.S. 941, 107 S.Ct. 1593, 94 L.Ed.2d 782 (1987). Adhering to this general rule, this court dismisses Counts II and III of Panozzo's complaint. The court lacks jurisdiction to assess the merits of Panozzo's state claims. To obtain judicial resolution of his claims for breach of contract and retaliatory discharge, Panozzo must file suit in state court, the appropriate forum for adjudicating his state claims.

### CONCLUSION

For the foregoing reasons, this court declines to adopt the magistrate's report and recommendation. The court grants defendants' motion for summary judgment with respect to Count I of Panozzo's complaint. In addition, the court dismisses Counts II and III for lack of federal jurisdiction.

IT IS SO ORDERED.